SMITH, Respondent, vs. CHRISTOPHERSON and others, Appellants.

*May 3—June 8, 1954.*

For the appellants Norman Christopherson, Verna Christopherson, Iver M. Hagen, Vern McCarty, and Donald Stocker there was a brief and oral argument by *Louis G. Nagler* of St. Croix Falls.

For the appellants R. H. Schildhauer and Anthony P. Gawronski there was a brief by *Doar & Knowles* of New Richmond, attorneys, and *George E. Rapp,* United States attorney for the Western district of Wisconsin, of counsel, and oral argument by *Warren P. Knowles III.*

For the respondent there was a brief by *Wurster & Curtis* of Merrill, and oral argument by *Carlyle B. Wurster.*

152

BROADFOOT, J. The complaint first sets out the names, occupations, and addresses of the parties. The plaintiff is a building contractor residing at Merrill, Wisconsin. The defendants Anthony P. Gawronski and R. H. Schildhauer are respectively the director and assistant director of FHA for Wisconsin, and reside at Milwaukee, Wisconsin. The defendants Norman Christopherson, Verna Christopherson, Iver M. Hagen, Vern McCarty, and Donald Stocker are residents of the village of Osceola, Wisconsin. Other allegations of the complaint are summarized as follows:

In February, 1953, the Federal Housing Administration advertised for applications for the construction of 24 units of defense housing at Osceola. Prior thereto it had informally approved outlot No. 20 in Osceola as the most desirable available site for such housing project, which was known to all of the parties to this action. The defendants residing at Osceola formed a group for the purpose of constructing the 24 units of defense housing and agreed to form a Wisconsin corporation to be named "Osceola Homes, Inc.," for said purpose. On February 24, 1953, the defendants Norman Christopherson and Verna Christopherson, husband and wife, who were the owners of said outlot No. 20, for a valuable consideration executed, acknowledged, and delivered to the plaintiff the exclusive option to purchase such lot for $4,000 at any time from the date thereof to June 30, 1953. A copy of said option, marked "Exhibit A" is attached to the complaint. The option, except for signatures and acknowledgment, reads as follows:

"For and in consideration of fifty ($50) dollars, the receipt of which is hereby acknowledged, paid to the undersigned Norman Christopherson, his wife, owners, by Harold L. Smith of Merrill, Wisconsin, to have the exclusive right to purchase within a term to June 30, 1953, from date hereof, the following property, viz:

"All of outlot No. Twenty (20), as laid out and platted by P. R. Bannister, and now on file in the office of the register of deeds, Polk county, Wisconsin, located in the village of Osceola, *excepting* Lots No. 1, 3, 4, and 13 and 14, as numbered on the map, attached hereto, for the sum of four thousand and no/100 ($4,000) dollars, upon the following terms:

"Cash to the seller.

"It is understood and agreed buyer is to assume the taxes for 1953.

"Buyer will furnish his own title policy, and pay for same.

"In the event that buyer does not get the FHA commitment, he agrees to notify the seller immediately; this option is then null and void, and buyer forfeits the fifty dollars paid on this date.

"Buyer hereby agrees not to build any place else in Polk county the Osceola defense housing, as described in the bulletin from the Federal Housing Administration, dated February 16, 1953.

"The said Norman Christopherson and Verna Christopherson, his wife, owners, agree to furnish a complete abstract showing merchantable title to date of sale and will convey title by warranty deed.

"In case the property is sold under this option the sum paid for the option shall be credited upon the purchase price."

Before the option was executed the Christophersons consulted with the defendants Hagen and McCarty, and thereafter, at the request of the Christophersons, there was inserted in the option the provisions that the buyer would not build the defense-housing units elsewhere in Polk county, and if the buyer did not receive the commitment to construct such housing units, he would notify the seller and the option would then be null and void; that the execution and delivery of the option and the terms thereof were known to the defendants shortly thereafter. Regulations of FHA require all applications for commitment to construct defense-housing units be made by the person who is the owner of or otherwise has effective control over the land upon which such

units are to be constructed, and that a written option complies with the provisions for effective control; that all applications were to be filed with the FHA at Milwaukee by 4:30 p. m., March 17, 1953. Plaintiff filed a duly and properly completed application for such commitment prior to the deadline; that shortly before the deadline the defendants wrongfully, fraudulently, and maliciously prepared and filed with the FHA a pretended application for a commitment to construct said defense-housing units, which application was defective in many respects and which application falsely, fraudulently, and maliciously represented that the applicant had effective control of the title to. outlot No. 20 by virtue of a written option to purchase the same; that said statement that applicant had an option to purchase said lot was false, to the knowledge of all of the defendants, and was knowingly and maliciously made by them for the express purpose of defeating plaintiff's application and for securing such commitment by the defendants; that plaintiff's application and defendants' pretended application were the only applications filed for the construction of such units, and notwithstanding the fact that the application of the defendants was defective and false the FHA, acting through its director upon the false and fraudulent ground that the plaintiff did not then have effective control over the proposed site, gave its commitment to the defendants; that said actions by the defendants were done pursuant to an agreement and conspiracy amongst and with themselves to cause the plaintiff to lose such commitment and to obtain such commitment for their own group, and that the defendants were actuated by malice at all material times; that because of said conspiracy the plaintiff lost the profit which ordinarily he would have made in constructing the 24 units of defense housing, amounting to $30,246.

The complaint deals with the subject of defense housing, with which we are not entirely familiar. The only reference in the complaint to the federal law involved is to regulation

CR 3 of the Federal Housing Administration. No reference is·made as to the volume of the United States Code or to the Code of Federal Regulations where said regulation CR 3 may be found. Notwithstanding the fact that we have available the resources of the state law library and a most efficient staff, we are unable to locate said regulation. We have checked the United States Code Annotated and the Code of Federal Regulations dealing with the Federal Housing Administration. As a result of this search we have concluded that the references in the complaint to an application for a commitment refer to an application for war-housing insurance.

The complaint states that there was included in plaintiff's application the mortgagee's application for mortgage insurance. In other words, it appears that this is not a project to be built by the government with federal funds, and that plaintiff was not seeking a contract with the federal government for the construction of said housing, but for a commitment to insure the mortgage thereon. If our natural inference is correct, then the complaint does not state facts sufficient to constitute a cause of action.

The defendants attack the sufficiency of the complaint on the ground that it contains merely general allegations of a conspiracy without pleading facts upon which the allegations are predicated. It is true that alleging certain persons have entered into a conspiracy does not of itself allege a cause of action, but in analyzing the complaint the distinction between liability for criminal conspiracy and for civil conspiracy must be kept in mind. In an action for damages based on civil conspiracy the gist of the action is the damage, while in a criminal prosecution for conspiracy the gist of the action is the conspiracy itself. *Martin v. Ebert,* 245 Wis. 341, 13 N. W. (2d) 907. The complaint, however, does not sufficiently allege that plaintiff was damaged by any act or acts of the defendants. Plaintiff alleges that his application was

in due form and complied with the FHA regulations. He alleges further that the application of the defendants was deficient and contained false statements. He would have us infer that if the application of the defendants had been rejected for the reasons given that he, the plaintiff, would necessarily have received the commitment for insurance.

We are unable to draw that inference. Had plaintiff been the only applicant it does not follow from the allegations in his complaint that he would have been entitled to the commitment sought. Such commitments are given only to approved mortgagees and the complaint does not allege who the proposed mortgagee was or that he or it had been approved or was eligible for approval. The regulations of the Federal Housing Administration provide that applications may be issued upon conditions. These conditions might not have been satisfactory to the plaintiff.

The authorities cited by the plaintiff deal with conspiracy to breach an existing contract. The only contract plaintiff had was the option. No damages are sought for the breach of the option. The option, however, was conditioned upon his receiving the commitment. In the absence of allegations that plaintiff would have been entitled to the commitment sought even though he had been the sole applicant, his complaint is fatally defective.

The defendants Gawronski and Schildhauer contend that they are immune from suit because they are public officers. In many instances that is true. However, there are circumstances under which public officials may, and have been, held liable for their acts. Because of our determination that the complaint does not state facts sufficient to constitute a cause of action it is unnecessary to pass upon the point.

*By the Court.*—Order reversed and cause remanded with directions to sustain the demurrer for the reasons stated in the opinion.